NAHE v. BAUER et al.

(Supreme Court, Appellate Division, Second Department. November 18, 1910.)

CANCELLATION OF INSTRUMENTS (§ 47*)—FORGERY—SUFFICIENCY OF EVIDENCE.
    In an action to foreclose bonds and mortgages and to cancel assignments thereof, evidence *held* to show that the purported signatures to the assignments were forged.
    [Ed. Note.—For other cases, see Cancellation of Instruments, Dec. Dig. § 47.*]

    Jenks, J., dissenting.

Appeal from Special Term, Queens County.

Action by Bertha E. Nahe, individually and as administratrix, etc., of Louise E. Nahe, deceased, against Henry J. Bauer and others. From a judgment in favor of defendant Rhinehart, dismissing the complaint on the merits, plaintiff appeals: Reversed, and new trial granted.

See, also, 133 App. Div. 375, 117 N. Y. Supp. 635.

Argued before WOODWARD, JENKS, THOMAS, RICH, and CARR, JJ.

Edward G. Nelson, for appellant.
Edward M. Grout and F. Sidney Williams, for respondent.

THOMAS, J. Mrs. Fint, a surviving trustee under a will, held two bonds and mortgages for Louise E. Nahe; and the plaintiff, succeeding to the latter's interest, seeks in this and another similar action to foreclose them, and to cancel assignments thereof to Remsen, and later assignments through which Rhinehart claims title to them. Mrs. Fint had intrusted the securities to Roehr, who was her own and the lawyer for the estate, and by his act they were assigned to Remsen, and by the act of both and to pay their debt to Rhinehart they were assigned to the Montauk Brewery Company. Rinehart's history of the transaction is as follows:

"Mr. Roehr was indebted to the Montauk Brewing Company in the sum of $6,800. Mr. Roehr and Mr. Remsen were indebted to the Montauk Brewing Company to the extent of $6,800. They were transferred, or left with the Montauk Brewing Company, and transferred to the American Malting Company in payment of a debt that the Montauk Brewing Company then owed to them, as collateral security upon a note made on the 4th or 5th of February, for four months, payable on the 5th of June, 1907; and when that note came due the corporation hadn't the funds, and I paid the amount of the note of $6,000 and took an assignment of these mortgages. I personally paid the debt of the Montauk Brewing Company, and took over the collateral which they had. I did that to protect my interest in the Montauk Brewing Com-

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

pany. At the time when I paid my money to the American Malting Company and became the person invested with these mortgages, I had no notice of any alleged difficulty in the title to these mortgages—none whatever. We had been paid the interest in June of 1907 by the owners of the property—Mr. Bauer and Mr. Gampert."

The assignments, dated and acknowledged July 17, 1906, before Roehr, recite suitable consideration and are signed: "Mary X Fint [L. S.], Trustee." Remsen, disclaiming that he is a "moneyed man," makes no pretence of having purchased the mortgages. His evidence shows that he first saw the assignments in the hands of Roehr, that he had no connection with their preparation, no contract to purchase them, and that, although he paid nothing for them, they were assigned to him in connection with the contract for the purchase of the stock of the brewery from Rhinehart and another, to which Remsen was a party, and in which Roehr was personally and actively interested. Now, it is clear that for such purpose Roehr, since absconded, stole the securities, forged the assignments, and falsely certified the acknowledgments. The trustee died before the actions were brought. She could read and write, and, although ill during the summer of 1906, and so incapacitated for business that she gave her daughter power of attorney, yet there is no evidence whatever that she was disabled from writing her name, and there is abundant evidence that she was not in Kings county, where the venue of the acknowledgments is laid, during the summer of 1906, but was confined to her bed or house by sickness in the county of Queens. Moreover, Roehr was not seen at her house during that summer by her daughters, who lived with her, nor by those in attendance upon her. There is no evidence whatever that the trustee executed the assignments, except the certificates of Roehr to the acknowledgment, and there is no evidence of sale, unless it may be found in the testimony of Gampert and Bauer, who were interested in the payment of the mortgages. These men, after interview with and at the suggestion of Rhinehart, called in company upon Mrs. Fint. One engaged the mother and the other the daughter in conversation, as they state. But from Bauer's evidence it is perfectly clear that neither Mrs. Fint nor her daughter knew anything of the assignments or of Remsen. Gampert's statement is that he said to Mrs. Fint, "I see you sold the mortgage," and that she answered, "Yes," and thereupon he proceeds to describe Bauer's interview with the daughter as follows:

"Bauer asked, 'Do you know who bought the mortgage?' and she answered, 'No,' whereupon Bauer said, 'A man named Remsen bought it,' to which the daughter replied, 'I will find out for you, if it is so or not.'"

Nothing further was heard from the mother or daughter. The daughter states that such conversation did not take place. How could a trustee, not permitted to sell except for proper consideration, state that she had sold, when she had not? It is certain that there had been no sale, and is incredible that she admitted that there had been. Remsen denies that he purchased. He was the mere assignee named in the forged assignments, prepared by a lawyer recreant to his client,

who stupidly and wickedly signed by means of a mark the name of a woman who could read and write, and falsely certified the acknowledgment in the county where she was not, and where she was disabled by sickness from coming. Now, it is not conceivable that under such circumstances the trustee could have acknowledged to Gampert that she had sold the mortgages, and the grounds of disbelief are strengthened by the ignorance of the whole matter revealed in the evidence of Rhinehart's envoys. The law gives great evidentiary force to the certificate of a notary. It is well that persons purchasing in reliance upon the genuineness of an official certificate to the instrument of conveyance or transfer should have great protection. But it is also equally important that the owners of property should not find themselves deprived of it by its appropriation to the payment of the debt of the notary making the certificate in the manner that appears in the present case.

The judgment should be reversed, and a new trial granted; costs to abide the final award of costs. All concur, except JENKS, J., who dissents.

PER CURIAM. Judgment reversed, and new trial granted, costs to abide the final award of costs, on the authority of Nahe v. Bauer (decided herewith) 125 N. Y. Supp. 592.

